UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUDREY ROBINSON
for CADARIUS L. MORRIS,

                            Plaintiff,

   v.                                           **DECISION AND ORDER**
                                                           04-CV-953

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

1.     In this case, Plaintiff Audrey Robinson challenges an Administrative Law Judge's ("ALJ") decision that her minor child, Cadarius L. Morris ("Claimant"), is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that her child is disabled due to hyperactivity and speech/language delays and is therefore entitled to payment of Supplemental Security Income ("SSI") under the Act.

2.     Plaintiff filed an application for SSI benefits on behalf of Claimant on October 11, 2001. Her application was denied initially and upon reconsideration. On May 14, 2003, Plaintiff, Claimant, and their representative -- a paralegal with Neighborhood Legal Services -- appeared before ALJ Mark Sochaczewsky for a hearing. The ALJ considered the case *de novo*, and on September 24, 2003, issued a decision denying Plaintiff's application for SSI. On September 29, 2004, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on November 29, 2004, challenging Defendant's final decision.[1]

---

[1] The ALJ's September 24, 2003 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3. On May 26, 2005, both Defendant and Plaintiff moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, oral argument proceeded before the Honorable H. Kenneth Schroeder, United States Magistrate Judge, on August 18, 2005. Judge Schroeder reserved decision at that time. On December 21, 2006, this case was reassigned to the undersigned by Chief Judge Richard J. Arcara. For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion seeking the same relief is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.     On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits.  See 42 U.S.C. § 1382c.  In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(C)(i).

      7.     The regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings.  20 C.F.R. § 416.926a(a).  In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.  See 20 C.F.R. § 416.926a(b).

8.      The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the child must demonstrate: (1) that he or she is not working; (2) that he or she has a "severe" impairment or combination of impairments; and (3) that his or her impairment or combination of impairments is of listing level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924. A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a.

9.      Applying the sequential evaluation in the instant case, the ALJ found first that Claimant had never engaged in any substantial gainful activity. (R. at 21, 25).[2] Second, the ALJ concluded that Claimant's speech/language delay and hyperactivity constituted severe impairments under the Act. (R. at 21, 25). Third, he determined that Claimant's impairments did not meet or equal any listed impairments. (R. at 21-25). Specifically, the ALJ evaluated Plaintiff's physical and mental impairments and noted that the medical evidence did not substantiate an extreme limitation in a single domain of functioning or a marked limitation in at least two domains. (R. at 25). Therefore, the ALJ concluded, Claimant's impairments did not "functionally equal" a listed impairment. (R. at 25). Ultimately, the ALJ determined that Claimant was not under a disability as defined by the Act at any time through the date of his decision, September 24, 2003. (R. at 26).

10.     Plaintiff argues that the ALJ did not set forth specific findings with respect to Claimant's limitations in each of the six domains of functioning, leaving open the possibility that Plaintiff was markedly impaired in at least one domain. This Court finds, however, that

---

[2] Citations to the underlying administrative record are designated as "R."

the ALJ clearly concluded that Claimant's impairments did not render him disabled, and that the alleged ambiguity in the ALJ's findings does not undermine this conclusion. In his decision, the ALJ unequivocally states that "[C]laimant's impairments do not result in an 'extreme' limitation in at least one broad domain of functioning or 'marked' limitations in at least two broad domains."  (R. at 25). Before reaching this determination, the ALJ made detailed references to the opinions of Claimant's teachers, his social history reports, his educational and psychological evaluations, his speech/language summary, his individualized education program reports, his childhood disability evaluation, his various IQ tests, his testimony and that of his mother, as well as reports from the state agency medical consultants.  (R. at 22-24).

Specifically, the ALJ afforded substantial weight to the assessments rendered by the state agency medical consultants, whose opinions he found to be consistent with the medical record. (R. at 24). In endorsing the consultants' opinions, the ALJ acknowledged each of six of the domains of functioning that must be assessed to make a disability determination, and noted that according to Claimant's February 27, 2002 childhood disability evaluation, the state agency medical consultant found only a "marked limitation" in the domain of "acquiring and using information." (R. at 24, 96-97). As previously set forth herein, a child's medically determinable impairment or impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain to "functionally equal" a listed impairment. See 20 C.F.R. § 416.926a. If not, he or she is not entitled to benefits under the Act.

Although the ALJ endorsed the consultant's February 27, 2002 evaluation that Claimant had a "marked" limitation in the "acquiring and using information" domain, he also acknowledged that Claimant's limitation in this domain might actually be "less than

5

marked." (R. at 24). Specifically, the ALJ reasoned that Claimant's tests demonstrated that his IQ was higher than was previously assessed by the consultative examiner. (R. at 24). In sum, the ALJ concluded that Claimant had a marked limitation in only one domain or perhaps no marked limitations at all. In either case, Plaintiff's impairments were insufficient as a matter of law to support a finding of disability under the Act. See 20 C.F.R. § 416.926a. Under the circumstances, this Court finds that the ALJ stated his findings with sufficient particularity to support his ultimate conclusion that Claimant's impairments did not render him disabled.

  11. Plaintiff next argues that the ALJ's conclusion with respect to Claimant's limitations was not supported by substantial evidence.[3] This Court does not agree. As previously set forth herein, the ALJ clearly endorsed the state agency medical consultants' evaluations in concluding that Claimant's impairments did not functionally equal a listed impairment. (R. at 24). State agency medical consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act, and their opinions constitute expert opinion evidence which can be given weight if supported by evidence in the record, as in this case. See 20 C.F.R. § 404.1527(f)(2)(i).

  In addition, the ALJ relied on reports from Claimant's educators and mental health specialists to support the determination that he was not disabled. For example, the ALJ cited to a social history report dated March 6, 2003, which stated that although Claimant "required frequent levels of discipline, [he] had good peer relations, played well, did not have a history of acting out behaviors in home or school, and was able to participate in

---

[3]In support of this argument, Plaintiff fails to cite to any evidence that Claimant had a marked limitation in any domain other that "acquiring and using information," or that he had an extreme limitation in any domain. As the Second Circuit held in Dumas v. Schwieker, 712 F.2d 1545, 1553 (2d Cir. 1983), an ALJ is "entitled to rely not only on what the record says, but also on what it does not say."

activities outside of school with relatives and family." (R. at 23).  He also noted a February 24, 2003 report in which Debra Berger, an educational specialist, opined that Claimant's "interactions were appropriate and behavior was unremarkable[, and]. . . . [his p]re-academic skills were developing at an average rate for reading and written language with some delayed rate for Math." (R. at 23).  In addition, the ALJ acknowledged a July 10, 2002 psychological evaluation by school psychologist Michael A. Munella, in which he stated that "claimant displayed intellectual functioning with the low average range[;]. . . . [w]ith language, [he] could label pictures in an age appropriate manner, he understood simple 'wh' questions[,] and showed adequate social reasoning." (R. at 23).

Other evidence cited by the ALJ includes a report by school psychologist David G. Metzen indicating that "claimant appeared to be a child who had not been exposed to pre-academic activities that would ready him for school," and suggesting -- in the ALJ's words -- that "claimant needed exposure to a structured, kindergarten setting in order to start developing academic readiness." (R. at 23).  Finally, the ALJ noted an educational evaluation dated July 10, 2002, which stated that "claimant's preschool skills were developing and regular kindergarten was suggested." (R. at 24).  In the view of this Court, these reports and the other evidence cited constitute substantial evidence that Claimant's impairments did not render him disabled.

12.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective evidence and opinions rendered by the state agency medical consultants, Claimant's educators and his mental health specialists.  It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the evidence in finding that Claimant is not disabled.  Accordingly, finding no reversible error and further finding that

substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's Motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   March 1, 2007
         Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge